Richard Duffy
vs.
United Electric Railways Company
} No. 88221.

July 28, 1934.

FROST, J. Heard on defendant's motion for new trial after verdict for plaintiff in the sum of $400.00.

This is an action to recover for personal injuries alleged to have been suffered when the truck which plaintiff was driving was in collision with an electric car about four o'clock in the morning of July 18, 1931, at Six Corners, so-called, in the Town of East Providence.

Plaintiff was driving a large truck, partially loaded with garden produce, from Taunton to Providence. He was proceeding westerly on Taunton Avenue on his right hand side and when, as he testified, he was about ten feet from the corner (opposite O'Connor's Drug Store as shown on plat) he saw across the square an electric car stopped ten to fifteen feet back from the corner (Atlantic Refining Company's corner). He was then traveling ten to fifteen miles an hour.

The operator of the electric car, a man of many years' experience, testified that he was proceeding northerly on Broadway; that he stopped his car to turn the switch at the corner of Broadway and Taunton Avenue; that he then proceeded northerly across the "Corners"; that when opposite the traffic beacon he looked to his right saw nothing; that he then looked to his left; that he did not look again to his right; that one of his passengers, a fellow employee, shouted; that he turned and saw the truck "about two feet in front of his dasher"; that he was then going about 7 miles per hour; that he applied his brake. There was testimony that the car struck the rear left wheel or the body of the truck just forward of the wheel.

It seems almost incredible that the operator, standing in the front vestibule of his car, could fail to see a large truck approaching the track that his car was on at an angle somewhat more favorable than a right angle for

his view, since it would seem that the truck must have been within the range of his sight for at least two hundred feet easterly on Taunton Avenue. But the operator testified, and no doubt honestly, that he did not see the truck until it was in front of him. Duffy testified that his lights were lighted. The operator of the electric car *alone* of all the witnesses who testified said that he saw no lights on the truck.

While the speed of the truck varied with different witnesses, no one asserted that it was proceeding at what would seem unquestionably to be a high rate of speed.

It did not appear that Duffy at any time was conscious of the fact that the operator did not see the truck prior to the time when the truck was in front of the car. Upon the operator's own evidence he was clearly negligent in not discovering the truck before it was in front of him. The more difficult question is to determine whether this failure to observe the truck was the proximate cause of the accident or, to put the problem differently, to decide whether had the operator been vigilant he could have slowed down or stopped his car after it became evident that the truck driver intended to pass in front of the electric car.

Albert F. Sweet, a passenger sitting on the right hand side of the car, like the operator, an employee of long standing, testified that he glanced down Taunton Avenue and saw a truck; that he "hollered"; that the truck was then about 20 feet on his right; that the car was then seven to eight feet from the point of contact.

It is not wholly clear from his testimony whether Mr. Sweet meant that the truck was twenty feet away from the car diagonally or whether it was twenty feet distant from the track upon which the electric car was proceeding, but, in either event, had the operator under such conditions seen the truck he could hardly have thought that the driver would attempt to pass in front of the electric car.

Viewing the evidence in another way, it would seem from the testimony of the driver and the operator that the truck was moving about twice as fast as the electric car, or covering twenty-two feet a second while the car was going 11 or 11.7 feet a second. It was necessary for Duffy at some time before reaching the track to determine whether he could safely cross or whether he must wait for the passage of the car. Assuming this determination to have been made when he was 12 to 15 feet from the track, a distance within which he could stop his truck if necessary before reaching the track, the electric car must then have been 12½ to 14 feet from the point of contact, since the operator testified that he was two feet from the truck when the cab passed him. He also testified that at the rate he was running he could stop in 12 to 15 feet.

This calculation would seem to give some slight basis for the jury's conclusion that had the operator been looking, he could have slowed down his car sufficiently to allow safe passage of the truck but in view of the clear testimony of Mr. Sweet, the Court is not at all confident that there was a sufficient basis for the jury's verdict. Indeed, after a careful and detailed study of all the evidence in the case, the Court is not convinced that the plaintiff has proved by a fair preponderance of the testimony that the operator, had he been looking ahead when it became evident that Duffy intended to cross the track, could have stopped his car or slowed it down sufficiently to allow the truck to pass in safety.

The verdict of the jury does not do substantial justice between the parties and defendant's motion for a new trial is therefore granted.

For plaintiff: Hinckley, Allen, Tillinghast & Wheeler.

For defendant: Clifford, Whipple & Frank J. McGee.